The next case for today is 2020-20217, Byrd v. Lamb. Before we begin, I just want to point out that this was supposed to be the first case for this afternoon. And it's my understanding that counsel was detained in some other court. If you have another sitting that's going to conflict with the sitting with the Fifth Circuit, you need to alert Ms. Trice's office of that in a timely manner, so that we could have easily had you not scheduled for the first case if there was going to be a conflict. And as it was, the other case had to go ahead of you and last minute changes were made. So I would request that you would please show that sort of courtesy in the future. I apologize, Your Honor. I didn't think it would go that late. But you need to let people know that that's a possibility in the future. I'll schedule that. OK. OK. That doesn't affect any way you're standing before this court to argue. So I'm just wanted to get cleared up before we begin. And we are now going to proceed and move on. And I believe that it's Mr. It's Mr. Willie. Is that Wiley? Willie. Willie, Your Honor. Mr. Willie, it's your turn first, I believe, isn't it? Yes. Good afternoon. May it please the court. My name is Drew Willie and I represent Agent Ray Land. Your Honors, this case is about applying the law as written and as it stands today. The issues for you to decide today were just ruled on in a published case by this honorable Fifth Circuit court. Just five months and one day ago, on September 2nd, 2020, Aliva v. Navarre, 973 F3D 438, case number 19-507-95. The plaintiff, the police. You didn't make this argument that you the Aliva argument. And I know the case wasn't there, but you didn't make the argument before the district court, did you? There was a qualified immunity argument. The argument that wasn't made was the Bivens case. Right. Which is what the Aliva case is about. Bivens shouldn't be extended to excessive force in this context. That wasn't made to Judge Ellison. Isn't that correct? Your Honor, it was correct that the Bivens arguments, the same arguments that were written in the original brief by me in this court, which are the extension of Bivens into a new context even before Aliva was decided. Correct. The trial court did not. But we did argue qualified immunity. And the Bivens claims are so intertwined with qualified immunity that it's a threshold question. Is that because you forgot or you didn't know that that was a good argument? It seemed that the district court spent a lot of time citing cases. I've read the hearing transcripts and, you know, I think the court would have grappled with this issue had it been presented with it. Well, Your Honor, I agree that I think the court should have and the facts of the matter. I don't think that's a dereliction on the court's part in any way. Do you? No, I don't mean to suggest that the claims in this case were a Bivens claims. And so, you know, the arguments presented at trial court were obviously not the best for that for that case. But the qualified immunity arguments were made, which necessarily does include a Bivens analysis for federal agents. I'll address the waiver potential waiver issue with five points quickly since you mentioned it in that. And but I will say the plaintiff appellees hardly contested that issue in the brief. So I hope not to dwell on it and get some other arguments as well. But but first, as I said, qualified immunity was brought up at the trial court and both parties have had ample opportunity to address it here today in front of this court. The collateral order doctrine is at play where the immunity defense incorporates the Bivens claim necessarily. And there is a long line of cases that allows them to be brought up together at the appellate court for the first time. One Supreme Court case in that line is Cohen v. Beneficial Industrial Loan Corp. 337 U.S. 541, decided in 1949. The Bivens claims and the qualified immunity are not separable and are too important to be denied review by this court today. That is a point made in this in the case Ashcroft v. Equal 556 U.S. 662, decided in 2009. The fourth point on the waiver issue is that Bivens is an element of qualified immunity, which is well within your scope of review. There's multiple Supreme Court cases for that. Wilkie v. Robbins, 551 U.S. 537 and Hartman v. Moore, 547 U.S. 250 and Note 5, decided in 2006, specifically outlines that they should be brought together on appeal even for the first time. Ultimately, it comes down to a threshold issue for qualified immunity. Should this claim even be allowed to be brought, which is a necessary evaluation when you're looking at qualified immunity? You just can't separate the two. There was a D.C. circuit case recently as 2018 that found it to be true in a very similar situation. That case was Lift v. Office of the Inspector General for the United States, 434 U.S. Appellate v. 224, decided in 2018. That's my argument on the particular waiver issue. What I'll move on to is more of the arguments that were made in Aleeva, unless any judges have any more questions about the waiver issue. The trial court Aleeva case is what was plaintiff appellees cited for their sole support for the contention that this case does not present a new context for Bivens claims. And this court, the Fifth Circuit, clearly overruled that. I will discuss how this case is a new context and a new category of defendants for Bivens claims more in a moment. Before that, I will give a clear roadmap for you as to why you should order the trial court to overturn its denial of our motion to dismiss. Even under a less stringent analysis, in a typical 1983 case, without the Bivens claims added scrutiny, this case should still be dismissed. Because first, the plaintiff's allegations are not a constitutional violation. And second, the plaintiff's allegations do not violate a clearly established right. Under that clearly established right analysis is where the added scrutiny of hesitating to extend Bivens into a new context or new category of defendants come into play, along with some very serious separation of powers concerns, all of which weigh heavily in favor of dismissing these claims. First, to there not being a constitutional violation in this case, it is important to note from the beginning that factually there were no injuries in this case. De minimis injuries do not create a cause of action under this court's jurisprudence. Particularly this court should consider the precedent. If they allow this claim to move forward if an excessive force claim, we're allowed to continue in this case based off the facts that officers all over the country will be liable for merely brandishing their weapon during a stop. That's a dangerous path to take. The second claim was unreasonable seizure. And it's important to remember factually, the plaintiff was not arrested. My client merely detained plaintiff before he had called local police responding to his calls for help. Second, I'll move on as to why the allegations do not include a violation of a clearly established right. This isn't a run of the mill stop in any way, is it? You acknowledge that the idea that the brandishing of the weapon allegedly was extremely unusual and the gentleman was detained for over two hours and not allowed to go to the restroom and I mean, and it was allegedly we have to take those facts like that, I believe. This is not just a routine. This wasn't a routine traffic stop these people have a relationship. Don't they. These two particular people did not have a relationship and the two hours of detention and not going to the bathroom. Those are all claims against the local police who held him longer. The unreasonable seizure against my client agent Ray lamb, the Department of Homeland Security employee on the scene who first detained him was not at all this extreme length of time that you described. And I do agree it is an unusual case, but that speaks more to the particular reasons why there was reasonable suspicion for the stop to begin with. The boyfriend. This is a, this is a altercation between two people dating the same person, isn't it. No, your honor my client agent Ray lamb. His son had taken the plaintiffs ex girlfriend out on a date. His son was the boyfriend but that's it's it's a personal problem between these folks. Well, and they sued him in his capacity as a Department of Homeland employee. So, you know, the personal dispute issue is not relevant for your analysis. It is whether he had a reasonable suspicion for the stop and that reasonable suspicion speaks to what you, you did stay as it's an unusual stop but it's because of the stalking and harassing suspicion that caused Mr. Lamb to stop him. So it is unusual, but the circumstances did call for the officer to detain him and question and call local police. Putting aside, say Bivens is off the table which practically as a jurisprudential matter it almost is but absent Bivens water. What are some other remedies and Mr bird has what could he have brought. There was no harm here. So what could he have state law, could he have brought a state law tort claim for example, against Mr lamb not in his, not in his capacity as an officer. Sure. But he didn't. Okay, so state law tort claim you say he could have, he could have brought or could not have brought. He probably could have brought. Anything else that crosses your mind, or is it. Frankly, Your Honor respectfully it's a hard mental exercise to go down because again, just no harm was done that the trial judge even said after he made his ruling this seems like the kind of thing that should have been settled by just a handshake. So, it's hard for me to say what could he have done to cure any harms that he had because he didn't have any harms. He wasn't the one arrested, my client was the one who was arrested and charged with something that then got dismissed. So my clients, the one who had the harm. Really here. Really, even though it's your client who threatened him with a gun yelled he would put a bullet through his skull and I edited that and continue to yell to roll down his window and just said he would blow his head off. It's your client who was harmed in this situation is really my client was the one arrested and charged with a crime. And that is harm but all of that, I'm sorry I don't need to all of that is irrelevant to your analysis today to the legal analysis which requires the 1983 analysis, which necessarily does include the Bivens claim. So, to go back to it not the allegations not having a clearly established right. It has never been established that a federal agent cannot pull out his gun and call local officers on a suspect under suspicion of illegally stalking and harassing someone. I do think it's important I know I'm running out of time but to go through the Bivens analysis, the new context. The, the argument and Aliva is something to pay close attention to about new context plaintiff at police make it make a contentions that suggests that maybe this is not a new context because it's Fourth Amendment, but as your honors are well aware all Fourth Amendment claims are not the same. There's all kinds of different facts different context, different circumstances different legal analysis under Fourth Amendment jurisprudence and so certainly the word context and extending Bivens context is not just merely which amendment of the Constitution, it's being filed under. There have been only three contexts that Bivens claims are limited to in the Supreme Court's trilogy of cases. First, if the manicling of a plaintiff in front of his family and home and strip searching him in violation of the Fourth Amendment. Second discrimination on the basis of sex by a congressman against the staff person in violation of the Fifth Amendment. Third failure to provide medical attention to an asthmatic prisoner in federal custody in violation of the eighth. As correctly stated in Aliva virtually everything else is a new context as a Supreme Court has emphasized the understanding of new context is even the modest extension of the bill is trilogy is still an extension. In this case factually there are specific new context distinctions. This was done in a parking lot, not a private home, just like in Aliva, it was a VA hospital, not a private home. He was stopped for suspicions of stalking and harassing not a warrantless search of narcotics like Bivens no handcuffs were using this case. This was not a manicling in front of a family or conducting a strip search. It's also important to know that this would be extending Bivens to new defendants. Bivens was different officers from a different agencies. Bivens has never been applied to a Department of Homeland Security and no case exists where a Department of Homeland Security employee has was not given qualified immunity to date. If this court were to do that here would be the first time that's been done. It's important to note to the separation of powers issues, Congress can correct any action. I'll just for the sake of time direct this court to the Aliva for the discussion of that I'm talking about why the silence of Congress is relevant here and they can decide the corrective action here. It's not for this court to decide notably whether your client is still employed by the Department of Homeland Security does the record reflect that the record does not reflect. Okay, thank you. Notably on page 13 of the appellees brief they basically can see that this claim is an extension of Bivens and and seems to ask for equitable relief, but that's just not the law as written here. Your Honor is in conclusion, because in this case, no allegation of constitutional violation was made no allegation of a violation of a clearly established right occurred, and you should not extend Bivens to new context or new defendants this court should apply the laws written and grant our motion to dismiss. Thank you. Mr Radnor. Good afternoon, your honors. And again, I apologize about my tardiness. Obviously, I'm not gonna. I don't want to waive anything that any arguments that I would have against anything that Mr Willie just said, but we submitted I think a pretty strong brief, and I'll rely on my papers unless the court has questions I can tell that the panel has read the briefs. Well, I have a question why doesn't the leave his case. I totally got your case, because we have to follow prior panels we don't get to do anything. We, you know, we have a we're a strict rule of orderliness court. And so, you know, I know you cited the district courts version of the case which was in your favor but the new the Court of Appeals opinion is not very helpful to your side of the case. So how can you possibly win with the situation that the cases come out. The Aliva case. Well, I mean, the question, I think, and Aliva is whether it's a domestic matter and international matter. And obviously this is not an international matter. I, you know, I think your point is well taken. If, if we're given the chance to brief that particular issue perhaps we can each submit. Maybe a little bit more briefing on that one issue. But I understand your point. Okay. Council of colleagues, do you have anything for Mr Radner because he's going to rest on his briefs. Other than that, anything you have a question. I see none. Okay, that. Thank you, Mr Radner we have your, your position. Thank you all. Mr Willie you've saved time for rebuttal, sir. Thank you. I'll address the one point that opposing counsel made and that was an international. I'll just stress that the Bivens analysis. Again, like I said goes to new context and new defendants. This is a new factual circumstance in a Department of Homeland Security employees and new defendant, though, I mean it's not merely an international. Only time. Right. I mean, the, the, the point that they contended on why international was because of the duties of the federal agents. But the duties of a Department of Homeland Security officer goes far and wide beyond just merely international realms, and they are the ones who chose to sue him as a Department of Homeland Security office. If there are no further questions, I have nothing left to address. Thank you. This case is submitted. We appreciate your appearing via zoom today, counsel for both sides. Thank you. Thank you.